UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHERIE A. BADEAUX                                CIVIL ACTION

v.                                               NO. 20-3197

ST. CHARLES PARISH SHERIFF'S                     SECTION "F"
OFFICE, ET AL.

ORDER AND REASONS

Before the Court is the defendants' Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion is GRANTED.

**Background**

On Sunday, November 24, 2019 around 8:30 AM, the plaintiff Cherie Badeaux "rest[ed] peacefully" in her bed in her house. See Compl., ¶ 10. A short time later, Badeaux was awakened by the presence of St. Charles Parish Sheriff's Deputy Jeffrey Mahan in her bedroom doorway. Id. Badeaux "opened her eyes, sat up, took a closer look, and [Mahan] questioned her on the whereabouts of [her visiting brother] Beau Badeaux." Id. ¶¶ 10-11. "Filled with fear, embarrassment, [and] emotional and mental distress," Badeaux "immediately followed defendant Mahan to her back porch," where "Beau Badeaux had his arms raised up as defendant Mahan began to tell him he was under arrest." Id. ¶ 11. "Seconds later," Badeaux "witness another St. Charles Parish Deputy, defendant Frank

1

Fricano, enter the back door of her home without consent. Defendant Fricano approached [Beau Badeaux] and assisted defendant Mahan with the arrest." Id.

As Mahan and Fricano took her brother away, Badeaux "immediately spoke with her visiting sister-in-law, Ann Badeaux," who "advised that as she slept, she heard repeated loud and uninterrupted banging at the front door." Id. ¶¶ 12-13. "In response, Ann Badeaux not knowing who was at the door asked, 'who is it.' Defendant Mahan yelled 'we know Beau Badeaux is in there and if you do not open the door you will be arrested and imprisoned for impeding this investigation.'" Id. ¶ 14. "Terrified, Ann Badeaux opened the door. However, after opening the door defendant Mahan did not ask for permission to enter the residence, [but rather] forced his way into the residence." Id. ¶ 15. "At no point during this encounter did defendant Badeaux [ask] Ann Badeaux for consent to enter the residence. In fact, defendant Mahan never ascertained whether or not Ann Badeaux had the authority to give permission to enter the residence." Id. ¶ 16.

Despite never obtaining consent to enter Badeaux's residence, defendants Mahan and Fricano went ahead and entered anyway. Their reason for doing so? Their possession of a warrant for Beau Badeaux's arrest, who they reasonably believed to share an address with the plaintiff. See id. ¶ 18; see also Opp'n, Exs. A-1, A-2

(attachments and bench warrant for Beau Badeaux's arrest).[1] Because the Fourth Amendment does not preclude officers in Mahan and Fricano's position from acting in precisely such a fashion, Badeaux's complaint does not state a claim upon which relief can be granted.

I.

Rule 12(b)(6) allows a party to move for dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To demonstrate a facially plausible basis for relief, a plaintiff must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining whether a plaintiff has met this burden, a court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff," but must not accord an assumption of truth to conclusory allegations and threadbare

---

[1] Because they are integral to the plaintiff's complaint and incorporated by reference, these documents are appropriately reviewable at the motion-to-dismiss stage. See, e.g., Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004).

assertions. Thompson v. City of Waco, 764 F.3d 500, 502 (5th Cir. 2014).

The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the Court may review any documents attached to or incorporated into the plaintiff's complaint by reference. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). In addition, the Court may judicially notice matters of public record and other facts not subject to reasonable dispute. See United States *ex rel.* Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

II.

With this standard in view, the Court proceeds to evaluate whether Badeaux's complaint states a plausible claim for relief.

**A. Badeaux's Constitutional Claims**

The fulcrum of Badeaux's case is a claim that Mahan and Fricano's failure to obtain consent or a search warrant before entering her home violated her Fourth Amendment right to be free of unreasonable searches and seizures. Contrary to the defendants' mistaken assertions otherwise,[2] this central allegation could

---

[2] While counsel's duty of zealous advocacy is strong, its companion duty of faithfulness to the tribunal is equally important. Here, defense counsel either failed to observe its latter duty or missed the mark significantly. Whatever the reason for counsel's mishap, by citing the Fifth Circuit's blanket statement in United States v. Cravero but neglecting to mention a

4

clearly be read to state a baseline constitutional violation. In Steagald v. United States, the Supreme Court held that in the absence of consent or exigent circumstances, officers cannot search for the subject of an arrest warrant in a third party's home without first obtaining a search warrant. See 451 U.S. 204, 211–16 (1981). The core rationale for the Court's holding was simple: because as between the Government and the petitioner whose home was searched without consent or a search warrant, the Government's search "was no more reasonable . . . than it would have been if conducted in the absence of *any* warrant." Id. at 216 (emphasis added). As the Court reasoned,

> whether the arrest warrant [at issue] adequately safeguarded the interests protected by the Fourth Amendment depends upon what the warrant authorized the agents to do. To be sure, the warrant embodied a judicial finding that there was probable cause to believe [that the subject of the arrest warrant] had committed a felony, and the warrant therefore authorized the officers to seize [the subject]. However, the agents sought to do more than use the warrant to arrest [the subject] in a public place or in his home; instead, they relied on the warrant as legal authority to enter the home of a third person based on their belief that [the subject] might be a guest there. Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial

---

Supreme Court decision that both referenced Cravero by name and reversed a Fifth Circuit case relying on Cravero's rule and reasoning, counsel ran a grave risk of misleading the Court. A cursory glance at Cravero's citing references – which is plainly necessary for a case decided 45 years ago – would have revealed both the Supreme Court's decision in Steagald and subsequent Fifth Circuit decisions referencing it. (Plaintiff's counsel - whose opposition was three days late - also failed to find the Steagald case.)

> officer.  Thus, while the [arrest] warrant [at issue] may have protected [the subject] from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. . . .
>
> A contrary conclusion – that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant – would create a significant potential for abuse.

<u>Id.</u> at 214-15 (footnote omitted) (citations omitted).  Therefore, as framed by Badeaux, the allegations in Badeaux's complaint supply a plausible basis for finding a threshold constitutional violation.

As is often true, however, there is more to this case than meets the eye on review of Badeaux's complaint alone.  Indeed, as the exhibits to the defendants' motion indicate, Badeaux's central assertion – namely, that Mahan and Fricano entered *her* residence, in which Beau Badeaux was merely a *visitor* – is belied by judicially noticeable facts that must be considered in the interests of fairness and judicial economy.  <u>See, e.g.</u>, <u>Martinez v. Greater New Orleans Expressway Comm'n</u>, 2021 WL 1023054, at *1 n.1 (E.D. La. Mar. 17, 2021) (considering police report that was extraneous to plaintiff's complaint because, "while courts must ordinarily hew to a plaintiff's version of events in considering a Rule 12(b)(6) motion to dismiss . . . a court need not turn a

6

blind eye to harmful facts" in documents referenced by the plaintiff).

Here, Badeaux states in her complaint that when she "attempted to get clarification from defendant Mahan about his actions," Mahan "advised [her] that Beau Badeaux had a warrant for his arrest." See Compl., ¶ 18.  That allegation incorporates the warrant by reference, so insofar as either party is able to produce the warrant, the Court ought to consider its actual terms in assessing Badeaux's ability to state a plausible claim for relief.  See, e.g., Martinez, 2021 WL 1023054, at *1 n.1.  The defendants have done just that here, attaching the warrant as Exhibit A-2 to their present motion.

Exhibit A-2's terms are clear.  Styled as a "BENCH WARRANT," the document commands the Sheriff of St. Charles Parish to seize "the body" of one

>     BEAU BADEAUX
>     17944 RIVER RD
>     MONTZ, LA 70068.

Any officer in receipt of such a document would have objectively good reason to believe that the subject of the arrest warrant, Beau Badeaux, resided at 17944 River Road, Montz, LA 70068.  And *that* address is where the allegedly unconstitutional

entry at issue – as well as the arrest of Beau Badeaux – occurred in this case.³

That fact transforms this case from one about a warrantless and unconsented entry of a *third party*'s residence into one about the objectively reasonable entry of the apparent residence of the *subject of a valid arrest warrant*. As one might imagine, the legal consequences of that transformation are significant. Indeed, the Supreme Court has held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." See Payton v. New York, 445 U.S. 573, 603 (1980).

The arrest warrant attached as Exhibit A-2 to the defendants' motion speaks for itself. By that document's plain terms, 17944

---

³ Badeaux's complaint makes no mention of this address, so the pleadings alone do not establish that 17944 River Road was the site of the events at issue. However, here as well, judicially noticeable facts beyond the pleadings confirm that this was indeed the plaintiff Cherie Badeaux's address (which, according to the complaint, was the site of the allegedly unconstitutional actions at issue). As stated above, the Court may judicially notice matters of public record and other facts not subject to reasonable dispute. See United States *ex rel.* Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003). The April 25 and 26, 2010 police reports published by *Houma Today* fit this billing. See Police Report: April 25 – April 26, 2010, https://www.houmatoday.com/news/20100427/police-report-april-25---april-26-2010. That document, discovered in a simple Google search, references the April 25, 2010 arrest of one "Cherie Antionette Badeaux, 20, 17944 River Road, Montz" for "careless operation, underage DWI."

8

River Road was as much Beau Badeaux's address as it was the plaintiff's, and Mahan and Fricano's decision to enter that dwelling in execution of a valid arrest warrant accordingly passed Fourth Amendment muster and met the Fifth Circuit's "reason to believe" standard. See, e.g., United States v. Barrera, 464 F.3d 496, 504-05 (5th Cir. 2006).

### B. Badeaux's Remaining Claims

From the unavailing starting point discussed above, Badeaux tacks on general negligence claims and a § 1983 standard litany of pattern-of-misconduct allegations. In Badeaux's case, however, all such allegations are textbook examples of conclusory assertions that cannot get a complaint past a well-crafted motion to dismiss like the one before the Court. Consequently, Badeaux's conclusory assertions of negligence, patterns of misconduct, and deliberate indifference do not supply plausible bases for relief.[4]

\* \* \*

Moreover, although 42 U.S.C. § 1983 provides a cause of action to parties subjected to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Here, the plaintiff alleges no such deprivation.

---

[4] This is to say nothing of the individual defendants' qualified immunity, or the fact that the Sheriff's Office is not a suable legal entity. The Court does not reach either such issue because it need not do so in resolving the defendants' motion.

9

Accordingly, IT IS ORDERED: that the defendants' motion to dismiss is GRANTED. The plaintiff's claims are DISMISSED WITH PREJUDICE.[5] The defendants' alternative motion for summary judgment is DISMISSED AS MOOT.

New Orleans, Louisiana, May 12, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] Dismissal with prejudice is appropriate because Badeaux is represented by counsel, because she did not request leave to amend in the alternative to dismissal, and because "it is clear that the defects [in her complaint] are incurable." See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 349 (5th Cir. 2002).

10